The next case on the calendar this morning is Tucker v. Decker, No. 161018. Good morning, your honors. My name is Pietro Lynn. I represent Martha Tucker. As you may have seen in the materials, Ms. Tucker was a superintendent of schools in what we in Vermont call the Northeast Kingdom, which is a very rural area in northern Vermont. Ms. Tucker was charged wrongfully with failing to report to the Department of Children and Families child abuse, and as a result of that, her career was destroyed. The claims that we brought in this case... Failed to report allegations. That's right. Allegations. And that, your honor, really is the centerpiece of this case. In Vermont, there is a statute. The statutory language is clear that only where there is reason to believe that there...reasonable cause to believe that there is child abuse or neglect is a superintendent of schools or other educator in Vermont a mandatory reporter. I would say that she was wrongfully charged, much less that the officer didn't have probable cause to believe it was appropriate to charge her. I mean, the reasonable cause to believe is not a very high standard, and it seems to me that the purpose of the Vermont statute is to have an independent agency with no stake in the matter whatsoever, which is compelled by law to be given a report whenever there is reason...reasonable cause to believe such a thing has happened, because it's not...it is...it can be expected in certain circumstances that the school where the thing happens prefers, if it believes it wasn't true, it has a vested interest in not making the report. And so the statute legally compels the report to be made whenever there's reasonable cause to believe that it happened. And that doesn't mean that it did happen, but I don't see why there wasn't reasonable cause in this case. The fact that there are strong arguments, the fact that there are...I mean, the student who made the allegation had a bad credibility record. There was very good reason to believe it didn't happen. There was very good reason to believe it was a false accusation. But that doesn't mean there wasn't at the same time reasonable cause to believe that it did happen. So it seems to me you're... So let me respond. Twofold. The first piece is that, in fact, that issue was addressed by a Superior Court judge in Vermont who found that after a hearing on the matter, that there was no violation, there was not probable cause for the charges against her. So as a matter of law, the Vermont courts dealt with that issue. And the focus of that hearing... Does that mean that we cannot...are we precluded from...I mean, we don't have to, because there's no issue whether the officer...whether there, in fact, was reasonable cause. The only issue is whether the officer behaved inappropriately in his belief and acting upon the belief that there was reasonable cause. Your Honor, let me respond to that a little bit differently. So the court in Vermont found that there was not probable cause to find reasonable cause under the statute. And the focus... As far as malicious prosecution is concerned, you also need malice. And where...if there's probable cause, that ends it. But even apart from that, what possible evidence of malice is there? The only suggestion is that charges may or may not have been brought or things may not have been brought against the principal. But the principal is easily distinguished because she did do something about it while your client did not. So that there's no indication of malice. It seems to me the more interesting cases or issues are not the malicious prosecution, but the question of whether the mugshot and the release of the mugshot were invasions. Those are not easy for you either, but it seems to me those are stronger things that you can talk about than the malicious prosecution, because either on probable cause or lack of malice, it's very hard to see where that stands. Well, I respectfully disagree, Your Honor, and let me say why. There is a pattern of the course of this case, including requiring my client to submit to fingerprinting and mugshot, which was against both the law in Vermont and state police policy. And of course, Trooper Decker acknowledged that he was aware of the policy at the state police and he did it anyway. In addition to that, there were many instances in the affidavit where he took liberties and either included information that was not accurate, that was inculpatory, and excluded information that was exculpatory in terms of whether this alleged abuse even happened. In addition to that, the press release that he generated misstated the facts in a way that was self-serving. He said it was first reported to the principal, Noah Noyes, when in fact it wasn't, trying to hide the fact that the initial report was to a different mandatory reporter against whom no charges were brought. Your Honor, what we also see from the record in this case was that there was a lengthy conversation, frankly argument, between Martha and Trooper Decker at her office, and you see that in his affidavit of probable cause, where he became angry at her because she refused to agree with his interpretation of the statute. In fact, what we saw in the record is that when Noah Noyes reported to her the principal, the allegations, which he did not describe with any specificity, she told, she was told they were not true, it didn't happen, and she read the statute to him anyway and asked him whether there were reasonable grounds to conclude that this was in fact the case. Am I right in understanding that she was charged with two violations? Violations of 4913, reporting child abuse and neglect, that's the reasonable cause, as well as though neglect of duty by law. And I wonder whether your argument about malicious prosecution might be stronger perhaps with regard to the willful neglect, because I had a difficult time determining from the materials where the officer could have formed the view that her neglect was willful and that she knew of an obligation. In fact, she seemed to clearly believe she didn't have an obligation. Now, whether that's sufficient or not, one could argue about, but do you agree that there's a different level of showing that might be required? Yeah. Well, in response to the initial questions, we believe that the argument around the failure to report is a strong one, and it is even stronger with respect to the neglect of duty charge that was brought against her, which of course, which has a state of mind requirement in addition. And there are no facts in this case that would demonstrate that there was any intentional misconduct by Ms. Tucker. In fact, the history for Ms. Tucker is that she was a superintendent who many times over many years made reports to DCF. But again, what the district court did in this case with respect to our malicious prosecution claim is it focused on the underlying allegation without focusing instead on what Ms. Tucker knew based on this conversation with the principal. And what Ms. Tucker knew was only that there was a false report. It's similar to the Wilkinson case where this court, I think the only time this court has ever addressed the issue of the Vermont mandatory reporter statute suggested that where the allegation is withdrawn, that doesn't rise to the level of a mandatory report. And in fact, there is no meaningful distinction when the only information you have is there was a report, but it's false. And I know it's false and there's no duty to report, which is all Ms. Tucker knew at the time. The state seems to be arguing or your adversary seems to be arguing that the Vermont case of Lachey versus Department of Social and Rehab Services establishes that there's an obligation under the statute to report any allegations of abuse. Do you agree with that reading of Lachey? No. My reading of Lachey is that that is not a case that rises or falls on the issue of when is a mandatory report necessary. The statute's plain language is very different than, for example, the language that exists for the mandatory report of vulnerable adult abuse, which had the language reasonable suspicion. This statute has a very different language which requires the exercise of professional judgment by these licensed educators in Vermont. And again, I come back to it, where you are a licensed educator and the only information you have is there is an untrue report. And when you review it with your subordinate, you are told, no, it doesn't rise to that level. Okay. That may well be why she wasn't in fact obligated, but we're looking at whether Decker plausibly believed. I mean, does he have to do this very elegant analysis of this case? No. And your Honor, your point is an excellent one. The dismissal was on the issue of qualified immunity, but qualified immunity rises and falls not just on the law. We think the law is clear. The language is different than reasonable suspicion. The suspected abuser language that's in the counsel in their arguments only has to do with immunities for people who are reporters. The criminal liability component of this mandatory reporter statute is very clear. It is where there are reasonable grounds to find that there has been abuse and neglect. But what is critical here is that Decker knew that Martha Tucker's universe of information about this allegation was that it was an untrue allegation. She knew nothing more than that. She never once spoke to this child. She never once involved herself in the investigation. So any suggestion that Decker would have to parse through some very complicated piece of language is wholly untrue. Was anyone else charged? Well, so the principal was also charged, and he eventually pled to a $500 fine for a variety of reasons, but the person who... Did he plead to failure to report? Yes. Did he plead to the willful neglect charge? Oh, you've got me there. My recollection is he did not. But I will say this, that the woman to whom the licensed educator, the mandatory reporter to whom this matter was initially reported was not charged, ever. The person who allegedly engaged in the misconduct, Jayston Brigham, a teacher, was not charged, ever. And really, Your Honors, the charges stem from Trooper Decker's frustration with Ms. Tucker, who was combative with him during an interview because her interpretation of the statute was consistent with its plain language. Thank you very much. You have two minutes for rebuttal. Thank you very much. Ms. Gallagher. Good morning, Your Honors. Let me just move directly to the question of malicious prosecution because I think there are a couple of things that need to be clarified. The argument is that Ms. Tucker was told that the allegations were unfounded. That is simply not supported by the record. The record itself shows that within the first 24 hours, which is the trigger time for reporting, what happened was there was a phone call from Mr., the principal, Mr. Noyes. He told, according to him, he and Ms. Tucker never discussed the statute or whether it should be reported. And at that point in time, the only thing they discussed was that he would talk to the student. Within the 24-hour time period, the only thing that happened was that they spoke to the student, they spoke to the teacher, they spoke to one another, and they touched inappropriately. That was it. So to the extent that Mr. But did it also, though, come to light that the student apparently had a reputation for dishonesty? Yes. That she had made, she had a history of making other kinds of allegations that had been disproven. Is that correct? They referred to her as a pathological liar. And frankly, Your Honor, that is the basis on which they made their decision in that 24-hour period. And after that, they proceeded to look at different facts, which all happened after the reporting period. Within that reporting period, and this is clear from the affidavit of probable cause. In fact, the officer makes a distinction, specifically notes what was done within that 24-hour period. Because the claim that two other students said she was lying, that's inaccurate. So this notion that she was, that Ms. Tucker said, I was told it was unfounded, is simply not credible. In fact, the noise said we never discussed it in that first conversation. Could you point to material in the record that you think made it, that was known to Ms. Tucker knew, that suggests that it was reasonable for him to charge her with willful neglect of her legal obligations? If you'll bear with me, Your Honor, I will find it. Are you looking at the affidavit? I am looking at the affidavit of probable cause. I'm trying to find exactly where that is. Excuse me one second. I think I finally found it, and I apologize. Again, this is what he knew that she knew. Right. She says, I believe it's JA 192. It starts actually at 191. She, Ms. Tucker says, I want to know who's being investigated. And it goes into their conversation, and it indicates in paragraph 55 that the report had been made to Melinda that day. Martha said that Noah told her he was dealing with the situation, but he didn't believe there was reasonable cause. But then later on, I, in paragraph 80, Martha's saying there was a mutual decision, and he asked her why Noah stated he and Martha had never even discussed. I'm sorry, I don't see a paragraph 80. I'm sorry, 60, excuse me. I asked Martha why Noah stated he and Martha never even discussed calling DCF. And she said it was an unusual situation where victim one is known to be dishonest. Now, she also says students came forward immediately to say, but To say what? To say that she was lying. But if you go on into JA 194, it's, hang on. In reference to the pathological liar? Right. There is a, you know, I find it telling also that it's just not leaping out the page at you, that there was basis for him to believe that her, that she knew she had an obligation to report and declined to do so. There is, in fact, a reference to this, Your Honors, that's more specific. And I'm sorry if I can't find it right now, but I would ask for an opportunity. Maybe you could just write a short. I will, because it's very clear there's a paragraph in which he notes what was done during what period of time. Thank you. And I apologize for not being able to find that. Let me focus on the willful neglect. In fact, the willful neglect of duty, in light of what he felt was, had been done in that 24-hour period, it was a willful decision. There was not enough information. And his interpretation was that there is a decision that this student was lying without any basis for that finding, other than that it was her reputation. Well, even if she were, even if she had a credibility issue, people who lie can still be assaulted. So, and in fact, that's exactly the concern that I think the public has. How does that go to willful neglect? Because if she knew she had a duty and she neglected to do it in a deliberate way. In other words, I think the reasonable cause to believe standard is a lower standard. In fact, I think it's a very low standard. Do you think it's above just any allegation? Or do you think that it requires some kind of a minimal evaluation of the allegation? I think there's an implicit and reasonable means you can't just, you know, anything. If there were a case where it were on film and it was obvious that it was not true, well, that's a different story. But in this case, you had nothing but a student saying she had been assaulted. You have a mandatory reporter who didn't report within 24 hours. A court found probable cause here. How do you account for the failure to charge the person who first received the allegation? Well, first of all, I think she was more of a guidance counselor than the principal or the superintendent. Wasn't she a mandatory reporter? She was. But the decision of who to charge was not made by this officer. It was made by the deputy state's attorney. So he did not make the decision on who to charge. It was based on information provided by him. Yes. And his affidavit made it clear that Melinda Johnson had been the first person who was contacted. So his affidavit was absolutely accurate on that and the deputy state's attorney declined to prosecute. There's nothing odd because he did prosecute the principal. So he clearly did not do it just on an issue of timing. That is, if he had said or the thing showed that he went after the first person but not others, well, that could be sensible or not. But that's not what he did. He went after the first person and the third person. He went after the second and the third. And that's a little harder to understand. He went after the second and the third. The first person got the initial report and reported it to the principal. The principal then was the one who was making the decision along with Martha Tucker whether or not to report. They're the two that had the conversation. Mr. Noyes says they didn't even discuss reporting. It was just he was going to talk with the teacher, with the student. But the fact that one person wasn't charged who had, I think, less of a responsibility in terms of the overall educational system, I think is a reasonable decision. You have the only face-to-face conversation in the 24 hours with the complainant. No, that's not correct, Your Honor. Noah Noyes also had a conversation with the student within the 24-hour period. And the conversation that Melinda Johnson had, in fact, it wasn't a conversation. She made her write down a statement. And that was in the possession of Mr. Noyes. So it's your position that Ms. Tucker, having received word third-hand of an allegation, should have reported it even with the assessment of the people closer that it had no merit and that the person making the allegation was not to be believed? Except that the person that supposedly told her that says to Officer Decker that they never had the conversation. No, I'm saying, but is your position that she should have reported on the facts alleged here, which were the principal comes to her and says, we have this allegation, I don't believe it, there's this history, and she, in the face of that, has to report it? Yes, because I think an allegation from a student is a very serious thing in and of itself. The fact that you may think that this student is not the, have the greatest credibility, is, but you have no knowledge one way or the other about these specific allegations? I think, yes, you do. And that's consistent with the... She had reasonable cause to believe. I do. And I don't think that's a very high standard. I think it's, as the statute made clear, what the legislature was looking for was the reporting of suspected child abuse. That's, that was what they were looking for. They weren't looking for substantiated child abuse. Why wouldn't it just say allegations? I can't speak to why they didn't say that. I think what they were trying to do was create some level of subjectivity, but I certainly don't think it was the level of subjectivity that Mr. Lin is suggesting, which would make the statute utterly toothless. The fact that the reporting requirement was within 24 hours seems to me strongly to imply that the, that the, that it was not intended that there be a, a, a careful detailed evaluation of whether this is really, really something credible. Agreed, Your Honor. And it's, it's, there's no case law that said an allegation of a student alone isn't enough to trigger. The Lachey case made it clear that in receiving the report second hand didn't change the obligation and the, to, to actually report. So there certainly wasn't, I mean, we're talking about qualified immunity here. There was a finding of probable cause by this Vermont Superior Court based on the facts that Ms. Tucker says were inaccurate in part. And if we, and if we excise those facts, the facts that the videotape, the Decker said that the videotape didn't really accurately depict what was happening. Well, that's I think true because it was a photograph, I believe an iPhone recording of a recording that was fast forwarded. So even if that's false, I don't see how that goes to probable cause with respect to Ms. Tucker. What would be the circumstance if, if we were to conclude that qualified immunity protected the officer with respect to failure to report, but not necessarily with respect to willful neglect, what would be? Well, that was never pled below. So I don't, I don't, uh, I don't understand what you say. It was not pled that, uh, about willful neglect. I believe that the malicious prosecution claim was premised on the mandatory report or statute. And that certainly was the discussion that happened below. It could have been in the factual allegations that both were charged. But I submit to you that on this record, where we know what has happened in the 24 hour period, and there is nothing at that point, nothing that indicates that the student was lying. There is, at that point, Mr., the principal spoke with the student. You would discount, you would say that there, the history that had been made, this wasn't just a general reputation as I understand it. There have been specific incidents. It was her reputation. I believe that they were focusing on, uh, there was some, some assertion that she had gotten other people in trouble. I'm not sure what that means. Um, but, and, and there's certainly, um, when, when pressed Ms. Tucker didn't know this student at all, didn't know what the basis for the belief of her being a pathological liar was. And frankly, this is exactly the concern that, you know, um, authorities have about this statute that the information about as a pathological liar was something that emerged after 24 hours. No, it, that, that was one piece that did occur within the 24 hours noise said, well, actually it's not clear to be, to, it's not entirely clear. It, I believe it was said in one of two conversations, one occurred beforehand, one occurred after, and I don't know that we have tied it down specifically as to, as to which time, but, but the fact that, um, that doesn't go to any demonstrable proof that the student was lying. Um, that, that raises some suspicion. The question is, assuming it is in the case, whether a reasonable police officer would believe that there was willful neglect of this statute, where there is reason for him to know that the complainant originally was also described as a pathological liar. How about, you know, it may well be that a reasonable police officer would feel, yeah, that is willful neglect, but that's the question. It's not a question of whether she was a pathological liar, was not, whether some people are or are not. That's correct. And I think it was reasonable for him to say, okay, you know, given the purpose of the statute, which is to encourage reporting, encourage reporting of suspected child abuse, that, um, her failure to do so in these circumstances, when within 24 hours, there was nothing showing that, um, other than a credibility assessment by someone else about a person she didn't know. Um, I don't, I submit that that is exactly what the legislature wouldn't want to be happening, that we make credibility decisions and say, well, we don't have to report it because I don't believe her. I mean, that's, that's the argument. And that appears to me to suggest that we can say, well, you know, a student can report, but we don't believe her. So that's, that's good enough. I, I believe that the fact that, um, the teacher denied it and, um, you know. They did proceed to have an investigation. It was, we don't have to report immediately. We do need to investigate. We take these allegations seriously. And that was pursuant to. That's inadequate in your view. It's, they did the investigation under a different statute for purposes of educational, um, statutes. Um, and, and the, the 24 hour trigger is 24 hours. So yes, anything they did after 24 hours, they violated the statute. Um, and, and the statute doesn't say anything about investigating. Um, is there reasonable cause to believe when a student has made the allegation, when the, the person who the allegation, uh, comes to is a mandatory reporter. They don't make, they don't report within 24 hours. I submit to you that that's probable cause. And in fact, the court found probable cause. And these other facts that are supposedly, um, uh, false do not, do not question any of the other, of the underlying elements of the cause that she's a mandatory reporter and that she didn't report within 24 hours. We have the arguments then we'll hear from Mr. Lynn, please on rebuttal. Two quick points. The first goes to, um, this question of what was known to Martha Tucker. Now, your honors, remember the dismissal of the section 1983 claim was on a motion to dismiss. Um, the subsequent dismissal of the state law claim was on a motion for summary judgment. If we're looking at it in the context of a motion for summary judgment, I direct the court to joint appendix pages 170 and 171 where Ms. Tucker in deposition said specifically within the 24 hour period, I was told that the student made an allegation without specificity that there, that they had looked into it and the facts didn't support the allegation. It wasn't just reputational. It was, there were specific facts that showed that story did not stand up to scrutiny. So, so that's the information Ms. Tucker had. Now, what I would suggest to you is the statute says the moment you enter the state where you have reason, a reasonable grounds to believe that there is abuse or neglect, then the obligation to report is triggered. And so if there was ever a time during the course of their, um, uh, title 16, The question is, what does the officer believe that she knew at the time? And was it reasonable for him to think that she had a duty? Well, what, what she told him is I was told that this was a story that did not hold up, that these were untrue allegations. And is it reasonable for an officer having been told that with this statute there to think that that is not an adequate, whether he's right or not, but that is not an adequate reason for not. And what I would suggest is any reading of the plain language says reasonable, I'm sorry, I keep losing it. Reasonable grounds to conclude reasonable cause to, to believe. So, so the question is, as a reasonable officer, you look and you go, well, reasonable grounds to believe. I want to go back then to the willful, because if she gives this explanation and he thinks that the statute has a duty to report, what does that say about what he thinks about her state of mind? And is that in the case that is, is very sufficient for him, him to believe that she was willfully not following the statute or not? No, no judge, of course. And then the final issue I must. If I can follow up. Yeah, I think your adversary said that the malicious prosecution claim was focused on the failure to report as opposed to the willful neglect charge. Well, we raised the issue in the complaint. I think if the court looks to that, to the complaint, you'll see the issue is presented as one of the two charges that were raised. And our view is that the charges both were not meritorious. Now, the judge concluded that the case was, or that that claim was dismissed on a motion to dismiss without ever addressing the willful neglect piece. Now the final issue, I'm a little puzzled, however, if we were to conclude that your case, your appeal cannot succeed with respect to the mandatory reporter aspect. What would it change if we thought that the officer did not have a proper basis to charge her additionally with the willful neglect? Well, it would be a separate instance of malicious prosecution with its own universe of damages. The problem is that he arrested her. I'm sorry, that it was stated that he arrested her, that fingerprinting and so forth was done, that statements were made in the press that were damaging to her. But if the officer was acting in a manner as to which your suit cannot succeed with respect to the mandatory reporting requirement, does it change it that there was another charge that was less warranted? We'll have to sort our way through that. The short answer is, I don't know. Are there any possible damages? That is, after all, a suit has to allege possible damages. And I think the question that's being asked is, if she could be arrested and charged and all the other horrible things that happened afterwards would have happened anyway under something as to which he had qualified immunity, is there anything, are there any damages left as to which this was about forecaused? Well, we would have to develop a damages case on that basis. The short answer is, Judge, I don't know at this time what that looks like. Let me ask you one other thing. You began by saying that her career was ruined. It was. But she quit on her own. Well, and let me explain. In Vermont, we have a very odd statutory scheme for education. We have district school boards for every town, which is under the nominal control of a supervisory union. School boards do not work for superintendents. The district school boards employ the teachers and the principals in the building. They are not the employer of the superintendent. The supervisory union employs the superintendent. And so the superintendent has no authority to hire or fire teachers or supervisors. I can't imagine where your credibility as an educator is wholly undermined by the series of newspaper stories that followed this arrest or this citation and the release of the mugshot that her ability to present herself as herself as a credible educator was totally undermined. And when you got contract. The contract, the contract began before the charges were issued. The school year runs from June 30 to June 30 or July 1 to June 30. It was signed in the first week of July after the charge or July 23 after the charges were issued. But under Vermont law, I still don't see why she would quit. She would quit because she would go to meetings and people would heckle her. People were second guessing her principals and teachers were not collaborating or cooperating with her. But before I before I leave, I know I'm out of time, but I have to raise this other issue of invasion of privacy. The concept that somebody can force you to have a mugshot and to be fingerprinted to so that those things can be released to the press. Mr. Decker didn't release them, though. It's the Public Information Office, right, that released them. They become a matter of public record and open to the public generally as soon as they are part of the state police databanks. And those items were released and could have been released to anybody who asked for them and can be released to anybody who asked for them because they were illegally taken. There was no basis, and Decker even admitted he knew there was no basis to ever take her mugshot and fingerprints. And we believe that the invasion of privacy claim is a very strong one. Thank you very much. Thank you very much. Thank you very much. You both well argued. We will reserve decision.